Anna Y. Park, SBN 164242
Nakkisa Akhavan, SBN 286260
Lorena Garcia-Bautista, SBN 234091
Andrea Ringer, SBN 307315
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>SUNSHINE RAISIN CORPORATION dba National Raisin Company; REAL TIME STAFFING SERVICES, LLC dba Select Staffing; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT—TITLE VII**<br>• **CIVIL RIGHTS**<br>• **EMPLOYMENT DISCRIMINATION**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on sex (female) and to provide appropriate relief to three Charging Parties, Charging Party 1, Charging Party 2, and Charging Party 3, (the "Charging Parties"), and a class of similarly aggrieved individuals (the "Claimants") who were adversely affected by such practices. As set

forth with greater particularity below, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") alleges that Defendants Sunshine Raisin Corporation dba National Raisin Company and Real Time Staffing Services, LLC dba Select Staffing (collectively, "Defendants") unlawfully subjected the Charging Parties and a class of similarly aggrieved individuals to sexual harassment, including a hostile work environment based on their sex (female), constructive discharge, and/or retaliation for opposing unlawful employment practices in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2. This action is authorized and instituted pursuant to §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Eastern District of California.

## PARTIES

4. Plaintiff is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. At all relevant times, Defendant Sunshine Raisin Corporation dba National Raisin Company ("National Raisin") has continuously been doing business in the State of California and the County of Fresno.

6. At all relevant times, National Raisin has continuously been a corporation doing business in the State of California and has continuously had at least 15 employees.

7. At all relevant times, National Raisin has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

8. In each calendar year from 2015 through the present, National Raisin has continuously employed at least 201 employees.

9. At all relevant times, Defendant Real Time Staffing Services, LLC dba Select Staffing ("Select Staffing") has continuously been doing business in the State of California and the County of Fresno.

10. At all relevant times, Select Staffing has continuously been a corporation doing business in the State of California, and has continuously had at least 15 employees.

11. At all relevant times, Select Staffing has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

12. At all relevant times, Select Staffing has continuously been an employment agency under Section 701(c) of Title VII, 42 U.S.C. §§ 2000e(c).

13. In each calendar year from 2015 through the present, Select Staffing has continuously employed at least 501 employees.

14. At all relevant times, Select Staffing employed the Charging Parties and a class of similarly aggrieved individuals.

15. At all relevant times, National Raisin has been under contract with Select Staffing for services rendered in California and has been a joint employer with Select Staffing where both Defendants generally controlled the terms and conditions of employment of the Charging Parties and other similarly aggrieved individuals.

16. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise, or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting

individually, jointly, and/or severally.

17. Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## ADMINISTRATIVE PROCEDURES

18. More than thirty days prior to the institution of this lawsuit, the Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII by Defendants.

19. Defendants received copies of the charges of discrimination, and participated in the Commission's investigation, including by communicating with Commission enforcement staff and responding to requests from the Commission for a position statement, information, and documents.

20. On September 30, 2020, the Commission issued Letters of Determination to National Raisin, finding reasonable cause to believe that National Raisin violated Title VII as to the Charging Parties and a class of similarly situated individuals. The Commission further invited National Raisin to join with it in informal methods of conciliation in a collective effort towards a just resolution.

21. On October 30, 2020, the Commission issued Letters of Determination to Select Staffing, finding reasonable cause to believe that Select Staffing violated Title VII as to the Charging Parties and a class of similarly situated individuals. The Commission further invited Select Staffing to join with it in informal methods of conciliation in a collective effort towards a just resolution.

22. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letters of Determination on terms acceptable to the Commission.

23. The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

24. On May 24, 2021, the Commission issued Notices of Failure of Conciliation to Defendants.

25. All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>Statement of Title VII Claims</u>

26. Since at least 2011, Defendants have engaged in unlawful employment practices in violation of §§ 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) by subjecting the Charging Parties and a class of similarly aggrieved individuals to sexual harassment, retaliation, and/or constructive discharge.  The unlawful employment practices include but are not limited to those practices identified herein.

27. At all relevant times, Select Staffing has been a placement agency engaged in temporary and/or permanent personnel placements, with a location in Fresno, California.

28. At all relevant times, National Raisin has been a dried fruit product manufacturer with a facility in Fowler, California.

29. Since at least 2011, Select Staffing has been placing temporary and/or temporary-to-permanent employees at National Raisin's Fowler facility.

30. Since at least 2011, National Raisin has employed both temporary and/or temporary-to-permanent employees placed by Select Staffing and other staffing agencies as well as their own, direct employees.

31. National Raisin exercised control over both temporary and temporary-to-permanent employees placed by Select Staffing and/or other staffing agencies, including but not limited to, directly supervising their day-to-day work, receiving, responding and/or investigating their complaints, and/or subjecting them to discipline and/or termination from their assignment at National Raisin.

32. National Raisin controlled and held unexercised control over the terms and conditions of employment for employees placed by Select Staffing.

33. National Raisin accepted the complaints made by Select Staffing-placed employees and National Raisin investigated complaints made by Select Staffing-placed employees.

34. Select Staffing notified National Raisin about complaints it received from employees Select Staffing had placed, and National Raisin responded to Select Staffing's inquiries.

35. National Raisin had control over its worksite to investigate and correct the conduct that occurred at its worksite, including conduct of employees placed there by Select Staffing, whether it exercised that control or not.

36. National Raisin employed an individual, identified herein as "John Doe," from at least 2006 until 2017. At all relevant times John Doe worked in the National Raisin's Bulk Line Department and had the authority to reassign employees in the Bulk Line Department from one position to another, to assign shifts to employees, including overtime work, and had the ability to have employees terminated.

37. Between at least 2006 until June 2017, John Doe sexually harassed multiple women, including the Charging Parties and a class of similarly aggrieved individuals, including by: (i) leering at female employees while touching his genitals; (ii) touching female employees without their consent; (iii) touching his genitals while watching female employees; (iv) rubbing himself against female employees; (v) demanding that female employees have sex with him; and (vi) threatening to have them fired and telling them that if they complained about the harassment nothing would happen.

38. Defendants were well aware of John Doe's harassment of female employees, as they had documented complaints about him dating at least as far back as 2006.

39. Charging Party 1, female, was employed by Select Staffing and placed to work at National Raisin on or about March 9, 2016.

40. Beginning in or about March 2016 and through July 11, 2016, John Doe sexually harassed Charging Party 1 by, including, but not limited to: (i) repeatedly trying to touch her and rub against her; (ii) threatening to reassign her to the "back room," which was more isolated and

where he could attempt to grope her; and (iii) cornering her and attempting to massage her shoulders despite her telling him to stop.

41. John Doe's conduct was unwelcome and made Charging Party 1 uncomfortable.

42. John Doe's sexual harassment of Charging Party 1 was severe and pervasive.

43. On July 7, 2016, in response to another incident of sexual harassment, Charging Party 1 filed a complaint regarding John Doe's sexual harassment with a National Raisin

44. In response, the National Raisin directed Charging Party 1 to convey her complaint to Select Staffing.

45. Before she was able to do so, Select Staffing ended her assignment upon request from National Raisin on or about July 10, 2016.

46. In doing so, National Raisin designated Charging Party 1 as a "DNR" to Select Staffing, which means "do not rehire."

47. National Raisin terminated Charging Party 1 in retaliation for her complaining about John Doe's sexual harassment.

48. On or about July 11, 2016, Charging Party 1 complained about her unlawful termination to Select Staffing.

49. Despite Charging Party 1's complaints of sexual harassment and retaliation, the Defendants failed to take any corrective action or preventative measures to stop John Doe's sexual harassment.

50. After her unlawful termination, Charging Party 1 sought a new assignment with Select Staffing, but she was never provided with a new work assignment.

51. Charging Party 2, female, was employed by Select Staffing and placed to work at National Raisin on or about September 21, 2015.

52. In or about March 2016, Charging Party 2 was transferred to the Bulk Line Department, putting her in contact with John Doe.

53. Beginning in or about March 2016 and through June 2017, John Doe sexually harassed Charging Party 2 by, including, but not limited to: (i) repeatedly asking to have sex with

her; (ii) repeatedly touching her without her consent; and (iii) threatening to have her fired and telling her that if she complained about the harassment nothing would happen.

54. John Doe's conduct was unwelcome and made Charging Party 2 uncomfortable.

55. John Doe's sexual harassment of Charging Party 2 was severe and pervasive.

56. John Doe's harassment of Charging Party 2 continued until June 2017.

57. On June 6, 2017, Charging Party 2 filed a complaint regarding John Doe's sexual harassment with National Raisin and Select Staffing.

58. After Charging Party 2 formally complained in June 2017, about John Doe's sexual harassment, Defendants' employees began to ostracize her and mock her.

59. Due to the mounting harassment and fear of being terminated for complaining, Charging Party 2 resigned in or about July 2017.

60. Charging Party 3, female, was employed by Select Staffing and placed to work at National Raisin in or about October 2010.

61. From 2011 to June 2017, Charging Party 3 worked in the Bulk Line Department, putting her in contact with John Doe.

62. Beginning in 2011 and through June 2017, John Doe sexually harassed Charging Party 3 by, including, but not limited to: (i) repeatedly leering at Charging Party 3; and (ii) repeatedly grabbing his testicles and asking her if she wanted or liked it.

63. John Doe's conduct was unwelcome and made Charging Party 3 uncomfortable.

64. John Doe's sexual harassment of Charging Party 3 was severe and pervasive

65. In or around August 2011, Charging Party 3 complained to Select Staffing that John Doe was sexually harassing her.

66. Select Staffing relayed this complaint to National Raisin.

67. Soon after her complaint, Charging Party 3 discussed John Doe's conduct with Select Staffing 's On-Site Manager and National Raisin's Safety Director.

68. Defendants did not interview any witnesses or conduct any investigation in response to Charging Party 3's complaint against John Doe.

69. Instead, Defendants issued both John Doe and Charging Party 3 the same disciplinary warning.

70. John Doe's sexual harassment of Charging Party 3 did not stop, and it continued from 2011 until June 2017.

71. After Defendants failed to take appropriate corrective action as to John Doe's conduct, his sexual harassment of Charging Party 3 increased by, including, but not limited to: (i) continuing to grab his testicles while staring at her; (ii) touching her without her consent; and (iii) propositioning her for sex; and

72. John Doe's continuing conduct was unwelcome and made Charging Party 3 uncomfortable.

73. John Doe's sexual harassment of Charging Party 3 was severe and pervasive.

74. John Doe's sexual harassment of Charging Party 3 only ceased when he was terminated in June 2017.

75. Charging Party 3 has not been directly hired by National Raisin despite having worked for them through a staffing agency for over ten years.

76. In addition to the Charging Parties, Defendants have subjected a class of similarly aggrieved individuals to sexual harassment, retaliation, and/or constructive discharge.

77. The Claimants subjected to sexual harassment, retaliation, and/or constructive discharge include both female employees placed by Select Staffing and/or other staffing agencies as temporary or temporary-to-permanent employees with National Raisin and those female employees that National Raisin directly hired to work.

78. During his employment, John Doe sexually harassed the Claimants by, including, but not limited to: (i) leering at female employees while touching his genitals; (ii) touching female employees without their consent; (iii) rubbing himself against female employees; and (iv) demanding that female employees have sex with him;

79. John Doe's conduct was unwelcome and made the Claimants uncomfortable.

80. John Doe's sexual harassment of the Claimants was severe and pervasive.

81. In addition to John Doe, other male employees at National Raisin's Fowler facility also engaged in the sexual harassment of the Claimants, which was unwelcome as well as severe and/or pervasive.

82. Notwithstanding the Charging Parties' and Claimants' complaints, Defendants failed to take sufficient reasonable care to prevent and promptly correct John Doe's and/or the harassers' unlawful behavior.

83. Defendants did not have effective anti-harassment policies and/or procedures in place.

84. Select Staffing knew or should have known about the harassment because the Charging Parties and some of the Claimants complained about the sexual harassment to their supervisors, Human Resources personnel, and/or the EEOC, which then notified Select Staffing about these complaints.

85. Select Staffing failed to take prompt and effective remedial action reasonably calculated to end the sexual harassment, including but not limited to, failing to investigate and/or failing to conduct an adequate investigation, failing to interview third-party witnesses, and/or failing to adequately follow-up with its employees about their complaints.

86. National Raisin knew or should have known about the harassment because the Charging Parties and some of the Claimants complained about the sexual harassment to their supervisors, Human Resources personnel, and/or the EEOC, which then notified National Raisin about these complaints.

87. National Raisin failed to take prompt and effective remedial action reasonably calculated to end the sexual harassment, including but not limited to, failing to investigate and/or failing to conduct an adequate investigation, failing to interview third-party witnesses, failing to adequately follow-up with Select Staffing's employees about their complaints, and/or failing adequately disciplining harassing coworkers, supervisors, and/or managers.

88. The effect of the practices complained of above has been to deprive the Charging Parties and the Claimants of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female).

89. The effect of the practices complained of above has been to deprive the Charging Parties and the Claimants of equal employment opportunities and otherwise adversely affect their status as employees because of their engagement in protected activities in opposition to unlawful employment practices.

90. The unlawful employment practices complained of above were intentional and caused the Charging Parties and the Claimants to suffer emotional distress.

91. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the Claimants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices in violation of Sections 703(a) and 704(a) of Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs to ensure that they would not engage in further unlawful practices in violation of Sections 703(a) and 704(a) of Title VII.

C. Order Defendant to make the Charging Parties and Claimants whole by providing compensation for past and future pecuniary losses, including, but not limited to, appropriate back pay and front pay with prejudgment interest on any lost pay and benefits, in amounts to be determined at trial

D. Order Defendants to make whole the Charging Parties and the Claimants by providing compensation for past and future non-pecuniary losses, pursuant to Title VII, resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

E. Order Defendants to pay the Charging Parties and the Claimants punitive damages, pursuant to Title VII, for its malicious or reckless conduct as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 24, 2021   Respectfully Submitted

GWENDOLYN YOUNG REAMS,
Acting General Counsel
Washington, DC

LISA MORELLI,
Acting Associate General Counsel
Washington, DC

By: _____
ANNA Y. PARK
Regional Attorney
EEOC – Los Angeles District Office

NAKKISA AKHAVAN
Supervisory Trial Attorney

LORENA GARCIA-BAUTISTA
Senior Trial Attorney

ANDREA RINGER
Senior Trial Attorney

ATTORNEYS FOR PLAINTIFF
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION