IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>SUNSHINE RAISIN CORPORATION dba National Raisin Company; REAL TIME STAFFING SERVICES, LLC dba Select Staffing; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 1:21-cv-01424-JLT-HBK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER<br><br>(Doc. No. 48) |

Pending before the Court is Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") Motion for Entry of Protective Order ("Motion"). (Doc. No. 48). Defendant Real Time Staffing Services dba Select Staffing ("Select") filed an Opposition, (Doc. No. 49), and the EEOC filed a Reply (Doc. No. 50). With leave of Court, Select filed a Sur-Reply. (Doc. Nos. 56). On June 21, 2023, the Court held a hearing and heard argument on the EEOC's Motion. (Doc. Nos. 58, 62). The Court grants in part and denies in part the EEOC's Motion.

**BACKGROUND**

The EEOC's investigation in this matter arose out of charges of discrimination filed against Select and Sunshine Raisin Corporation dba National Raisin Company (collectively "Defendants")

by three individuals ("the Charging Parties"). (Doc. No. 1 at 4 ¶ 18[1]). On September 30, 2020, the EEOC issued Letters of Determination to National Raisin, finding reasonable cause to believe that National Raisin violated Title VII as to the Charging Parties and a class of similarly situated individuals. (*Id*. ¶ 20). On October 30, 2020, the EEOC issued Letters of Determination to Select Staffing, finding reasonable cause to believe that Select violated Title VII as to the Charging Parties and a class of similarly situated individuals. (*Id*. ¶ 21).

The EEOC engaged in conciliation efforts with Defendants, but the parties were unable to reach a conciliation agreement. (*Id*. ¶¶ 21-23). On May 24, 2021, the EEOC issued Notices of Failure of Conciliation to Defendants. (*Id*. ¶ 24). This action commenced on September 24, 2021 when the EEOC filed a complaint against Defendants pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C § 1981a.

On September 15, 2022, after initial settlement efforts reached an impasse, the Court held an Initial Scheduling Conference and issued a Case Management and Scheduling Order so the parties could commence discovery. (Doc. Nos. 25, 26). On April 14, 2023, Select issued its Second Amended Notice of Rule 30(b)(6) Deposition to Plaintiff EEOC, seeking to depose an EEOC representative on 19 categories of inquiry. (Doc. No. 48-2). This Order addresses EEOC's objections to each of topics identified in Select's Second Amended Rule 30(b)(6) Deposition Notice and essentially its request for a blanket protective order. (*See generally* Doc. No. 48).

**DISCUSSION**

**A.  Legal Standard**

Federal Rule of Civil Procedure 30(b)(6) addresses discovery, in particular deposition discovery, directed to an organization. It provides that a deposition notice "must describe with reasonable particularity the matters for examination," after which the organization "must then designate one or more officers, directors or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."

---

[1] All page numbers herein refer to the page numbers of the pleading or document in the CM/ECF.

2

Fed. R. Civ. P. 30(b)(6).  Generally, the topic list is attached as an exhibit to the notice.  The organization then must prepare the designated individuals for their depositions so that they can "testify about information known or reasonably available to the organization on the identified topics." *Id*.

While Rule 30(b)(6) allows for the deposition of an individual designated to testify on behalf of an organization, the scope of such discovery remains limited by Rule 26 which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .." Fed R. Civ. P. 26(b)(1).  Such "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.  Recognizing discovery in any case may implicate the legitimate privacy interests of litigants, *inter alia*, Rule 26 provides that a court, upon a showing of good cause, may enter a protective order to protect any party to a lawsuit from "annoyance, embarrassment, oppression, or undue burden or expense. . .." Fed. R. Civ. P. 26(c).  The court may impose limitations on discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).  The burden lies with the party seeking the protective order to show good cause for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981); *see also In re Roman Catholic Archbishop of Portland in Or*., 661 F.3d 417, 424 (9th Cir. 2011) (requiring moving part to show "specific prejudice or harm").

**B. The EEOC Cannot Categorically Refuse to Produce a 30(b)(6) Deponent**

As an initial matter, the EEOC concedes that it is not categorically exempt from producing a 30(b)(6) witness.  (Doc. No. 62 at 72:1-18).  This is an accordance with the plain wording of the Rule and well-established case law finding that government agencies enjoy no special exemption

from the requirements of Rule 30(b)(6).  *See* Fed. R. Civ. P. 30(b)(6) (expressly providing that "a party may name . . . a governmental agency . . ." in its notice); *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 398 (E.D. Cal. 2009).

Nonetheless, as a general premise, EEOC maintains that that because it has provided its entire investigative file comprising more than 3500 pages, a Rule 30(b)(6) deposition is not proportional to the needs of the case and is duplicative and overly burdensome to an agency with limited resources and a heavy case load.  (Doc. No. 48 at 20-21) ("This agency would be unable to function effectively if its employees were required to give depositions in even a fraction of these cases."); (Doc. No. 50 at 16).  Simply "[p]roviding an investigative file does not relieve the EEOC of its obligation under Rule 30(b)(6) to provide a witness to answer questions about those documents for purposes of clarification and interpretation."  *EEOC v. LifeCare Mgmt. Services, LLC.,* 2009 WL 772834 at *2 (W.D. Pa., 2009) citing *Tri–State Hosp. Supply Corp. v. United States of America,* 226 F.R.D. 118, 125–26 (D.D.C.2005).  At a minimum, Select should be permitted to clarify ambiguities related to the factual aspects of the material.  *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 397 (E.D. Cal. 2009).  The Court therefore finds that Plaintiff cannot assert a blanket privilege or exemption from discovery under Rule 30(b)(6) but must justify its request for a protective order with particularity as to the specific categories to which Select seeks inquiry.

**C. Categories 1-6 and 10-12**

Categories 1-6 and 10-12 of Select's Second Deposition Notice each seek "[f]actual information and documents that support or rebut" the claims in Plaintiff's Complaint and the remedies sought.  (*See* Doc. No. 48-2 at 4-6).  In addition to arguing that the materials are included in its investigative file, EEOC argues these categories are barred due to: (1) attorney-work product privilege, (2) governmental deliberative process privilege, (3) relevance, and (4) duplicativeness.  (*See* Doc. No. 48 at 12-19; 21-22).

First, Plaintiff asserts that, "[f]or the EEOC to testify regarding which facts or documents *support or rebut* the EEOC's claims is tantamount to offering the mental impression and analysis of EEOC counsel." (*Id*. at 17) (emphasis in original) (citing cases).  Second, Plaintiff contends that revealing the documents or other information that support or rebut the claims in the Complaint

4

would necessarily expose attorney-client communications and violate the governmental deliberative process privilege. (*Id*. at 17-18). Third, to the extent Select assert that the facts underlying the claims in the Complaint are relevant to its sixth affirmative defense—that the Complaint exceeds the scope of EEOC's investigation—the proposed categories of inquiry are irrelevant because they purport to seek testimony regarding "factual information and documents that support or rebut" the EEOC's claims or relief sought, not the underlying investigation. (*Id*. at 14).

In response to these arguments, Select first points out that its proposed categories do not facially seek the facts underlying the probable cause determination in this case and argue that EEOC's reliance on *EEOC v. Chipotle Mexican Grill, Inc*., 2019 WL 3811890, (N.D. Cal. Aug. 1, 2019) is misplaced. In that case, the deposition notice required EEOC "to disclose the '[f]acts and evidence on which the EEOC based its determination' of various conclusions in the Determination." *Chipotle Mexican Grill, Inc.*, 2019 WL 3811890, at *3. The court there found the notice was barred by the governmental deliberative process privilege. *Id*. However, the phrasing of Select's Second Deposition Notice here is distinct from that in *Chipotle Mexican Grill*, seeking "[f]actual information and documents that support or rebut" various allegations in Plaintiff's Complaint. Thus, on its face, the Deposition Notice does not seek information regarding the EEOC's probable cause determination, nor does the categories explicitly seek the basis for any decision by the EEOC or its staff. As previous courts have found, this makes the inquiry distinct from the kind pursued in *Chipotle Mexican Grill* and does not run afoul of governmental deliberative process privilege.

Select also cites several cases where courts permitted general lines of inquiry into the factual basis for a plaintiff's claims and specifically allowed the "support or rebut" formulation to which Plaintiff objects here. (Doc. No. 49 at 12). Select further notes that a disclaimer included with each of the categories ("[f]or the avoidance of doubt, this category does not seek attorney work product") prevents eliciting privileged information.

As another court observed on this subject, "[i]t is clear . . . that various courts have ruled differently on whether a Rule 30(b)(6) deposition notice with language similar to that in [Defendants' Categories 1-6 and 10-12] should be allowed to proceed." *See U.S. E.E.O.C. v. Source One Staffing, Inc.*, 2013 WL 25033, at *7 (N.D. Ill. Jan. 2, 2013) (*comparing EEOC v. JBS USA,*

5

*Inc.*, 2012 WL 169981 (D.Neb. 2012), and *EEOC v. McCormick & Schmick's Seafood Restaurant, Inc.*, 2010 WL 2572809 (D.Md. 2010) with *EEOC v. Albertson's LLC*, 2007 WL 1299194 (D.Col.2007), and *EEOC v. Kaplan Higher Education Corp.*, 2011 WL 2115878 (N.D. Ohio 2011)).

> Even the courts that have permitted depositions to proceed on these topics agree the EEOC is permitted to assert privilege in response to questions that delve into the EEOC's counsel's interpretation and impressions of the facts and evidence produced by the parties. The question is whether a deposition on the topics presented should be permitted to proceed, subject to whatever objections the EEOC might raise to individual questions based on privilege, or whether it should be barred at the outset.

*Source One Staffing, Inc.*, at *7 (citations omitted).

Upon review of the extensive referenced case law and the Second Deposition Notice, the Court ultimately finds the weight of authority permits Select to proceed with these categories of inquiry, subject to EEOC interposing objections as appropriate. Categories 1-6 and 10-12, despite their disclaimer, may well elicit privileged information. Nearly each category references legal claims and legal conclusions from the Complaint (e.g. facts pertaining to whether Defendants "failed to take sufficient reasonable care . . . [,]" whether Defendants "did not have effective anti-harassment policies and/or procedures in place," the basis for "the relief sought in this action, including but not limited to injunctive relief and punitive damages.")  (Doc. No. 48-2 at 5-6 ¶¶ 2, 3, 10). Many of the proposed categories arguably would likely require testimony of EEOC counsel. "[W]hile there is no prohibition against deposing an attorney of record in a case, such depositions generally are disfavored."  *S.E.C. v. Jasper*, 2009 WL 1457755, at *2 (N.D. Cal. May 26, 2009) (*citing Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). These categories thus risk "embroil[ing] the parties and the court in controversies over the attorney-client privilege."  *S.E.C. v. SBM Inv. Certificates, Inc.*, 2007 WL 609888, at *26 (D. Md. Feb. 23, 2007).  A party may avoid this problem by not designating counsel as their deponent. *See A.R. ex rel. Root v. Dudek*, 304 F.R.D. 668, 670 (S.D. Fla. 2015).

The Court is mindful that permitting the deposition to go forward subject to objections and assertions of privilege regarding individual questions may result in "an . . . additional burden for the

parties and the court in resolving the inevitable questions of attorney-client privilege." *McCormick & Schmick*, 2010 WL 2572809, at *4.  Nevertheless, the Court finds it would be premature to outright ban an otherwise legitimate subject of inquiry without a single question having been asked. *Albertson's LLC*, 2007 WL 1299194, at *5.  And there is ample support for Select's position that the factual bases for allegations in a complaint are discoverable.  See *EEOC v. Bank of Am.*, 2014 WL 7240134, 2014 WL 7240134, at *3 (D. Nev. Dec. 18, 2014) (denying protective order for Rule 30(b)(6) on topics including "[t]he facts supporting the EEOC's allegations set forth in the Complaint filed by the EEOC in this matter"); *EEOC v. Presrite Corp.*, 2012 WL 4434055, at *3 (N.D. Ohio Sept. 24, 2012) ("[F]actual information pertaining to the EEOC's claims, factual information gathered and obtained by the EEOC investigator, and factual information about the activities the EEOC conducted are not covered by the [deliberative process] privilege."); *see also Specht v. Google, Inc.*, 268 F.R.D. 596 (N.D. Ill. 2010).  Thus, with the cautionary instruction that Select not tread into the attorney-client privilege arena, the Court denies Plaintiff's Motion as to Categories 1-6 and 10-12.

### D.  Categories 7-9, and 17-18

This group of categories seeks internal policies and mandates of the EEOC that govern (1) the scope of EEOC investigations; (2) how the EEOC evaluates a company's anti-harassment policies and/or procedures; (3) how it calculates damages and penalties; (4) how and whether the EEOC investigates discrimination or retaliation resulting from sexual harassment; and (5) the investigation and prosecution of internal sexual harassment claims made by EEOC employees.  (Doc. No. 48-2 at 5-7 ¶¶ 7-9, 17-18).

These categories of inquiry appear to explore two distinct topics: (1) the EEOC's approach to investigating and evaluating discrimination cases by respondent companies in general; and (2) the EEOC's own internal policies for investigating and prosecuting sexual harassment.  As EEOC notes, these categories, "do not reference the Defendants, Charging Parties, class members, claims, or defenses in this litigation at all" and the EEOC contends they have no probative value in this case. (Doc. No. 48 at 12).

Defendants respond that the information sought is relevant to multiple affirmative defenses

and is therefore discoverable. (Doc. No. 49 at 15-19). As Defendants argue:

> The EEOC's complaint alleges that Select failed to take adequate "corrective action or preventative measures," failed to conduct an "adequate" investigation, and failed to take "prompt and effective remedial action" to end the alleged harassment. (Doc. No. 1 ¶¶ 49, 85.) Such allegations necessarily raise questions about whether the EEOC applies the same preventative measures, how the EEOC investigates alleged harassment, and what "prompt and effective remedial action" is required by EEOC policies, among other issues.

*Id*. at 16.

In support, Defendants cite several cases where courts permitted discovery of EEOC's internal policies. In *Kaplan*, *Freeman,* and *BMW Mfg.* the EEOC alleged that the defendants' use of background or credit checks in screening black and Hispanic job applicants constituted a discriminatory practice. *EEOC v. Kaplan Higher Educ. Corp.*, 2011 WL 2115878, at *1 (N.D. Ohio May 27, 2011); *EEOC v. Freeman*, 2012 WL 3536752 (D. Md. Aug. 14, 2012); *EEOC v. BMW Mfg. Co., LLC*, 2014 WL 12614419, at *1 (D.S.C. Dec. 9, 2014). Each defendant sought to depose the EEOC on its hiring practices, and whether the EEOC itself used background or credit checks in hiring because it would be relevant to the appropriateness of such practices. Each court found the inquiry into EEOC's hiring practices relevant on that basis. *Kaplan*, 2011 WL 2115878, *4 ("[w]hether the EEOC uses background or credit checks in hiring its employees is relevant to whether such measures are a business necessity. Accordingly, defendant is entitled to depose [EEOC's] Rule 30(b)(6) designee on these topics."); *Freeman*, 2012 WL 3536752, *2 ("if Plaintiff uses hiring practices similar to those used by Defendant, this fact may show the appropriateness of those practices, particularly because Plaintiff is the agency fighting unfair hiring practices"); *BMW Mfg. Co.*, 2014 WL 12614419, at *2 (rejecting EEOC's objection to producing hiring policies on the basis that the positions being hired for are different than those at BMW, and finding no harm from the requested production). Although not discussed by the court, in *Kaplan* the defendant's deposition notice also sought "[p]olicies, procedures, practices and criteria used by Plaintiff that determine or effect the scope of the investigation conducted or complaint brought by Plaintiff on behalf of a complainant(s) . . .." *Kaplan*, 2011 WL 2115878, at *1.

Select also cites *Bloomberg*, in which the EEOC alleged defendant failed to provide

8

reasonable accommodations to pregnant employees in violation of Title VII. *EEOC v. Bloomberg, L.P.*, 2010 WL 3260150, at *3 (S.D.N.Y. Aug. 4, 2010). There the court permitted defendant to obtain discovery regarding whether EEOC provided on-site childcare and lactation rooms during the relevant period, finding that "[t]he way EEOC's offices complied with Title VII during the class period may be probative of whether Bloomberg should have viewed Bloomberg's own practices as Title VII compliant or not." *Id.*

Likewise, in *Presrite Corp*, the court granted a motion to compel deposition testimony by the EEOC's Rule 30(b)6) witness regarding compensation and incentives for EEOC investigators. *EEOC v. Presrite Corp.*, 2012 WL 4434055 (N.D. Ohio Sept. 24, 2012). Defendant there asserted that the incentives and compensation that the EEOC investigator received could have an impact on the appropriateness of the EEOC's investigation of Presrite. The court therefore concluded that "Presrite should be able at least to explore this topic in discovery and determine if this will lead to admissible evidence." *Id.* at *13.

Thus, several courts have found disclosure of EEOC's internal policies appropriate where those policies could be probative of whether a defendant's own policies comported with Title VII, or where the policies could be proof of an improper motive for the enforcement action. Here, the Court agrees that whether Select's policies and processes for investigating sexual harassment are substantially similar to those used by EEOC could rebut Plaintiff's claims that those policies were not adequate. *See Freeman*, 2012 WL 3536752, *2. It would also tend to support Select's tenth affirmative defense, which asserts that Select complied in good faith with Title VII. (Doc. No. 12 at 18). Therefore, the Court denies Plaintiff's Motion as to Category 18.

As to Categories 7-9 and 17, Select claims that EEOC's own diligence in complying with policies and mandates regarding investigation of discrimination claims could be relevant to the estoppel claim raised in Select's fifth affirmative defense. (Doc. No. 49 at 16). However, "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cnty, Inc.*, 467 U.S. 51, 60 (1984). For Select to claim estoppel against the EEOC, it must have demonstrated "both that it detrimentally relied on the Government's conduct, and that it did so reasonably." *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135,

1140-41 (9th Cir. 1999) (citing *Heckler*, 467 U.S. at 59). In addition, Select must demonstrate "affirmative misconduct." *US v. Ven-Fuel, Inc.*, 758 F.2d 741 (1st Cir. 1985). Select here has made no showing that it relied on any policy of the EEOC in formulating its own policies. Nor has it alleged any affirmative misconduct on the part of the Government. The Court therefore finds Defendants are not entitled to any discovery based on their asserted estoppel defense. *EEOC v. Texas Roadhouse, Inc*, 2015 WL 13676686, at *5 (D. Mass. Apr. 3, 2015).

Finally, while Select's sixth affirmative defense seeks to bar the claims against it as "beyond the scope of any administrative charge or the EEOC's investigation thereof" this does not establish the relevance of EEOC's policies affecting the scope of its investigations. While Select may, as discussed further below, inquire into the scope, as opposed to sufficiency of EEOC's investigation, in terms of whether it extended beyond those charges "reasonably expected to grow out of the initial charge of discrimination" *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984), this line of reasoning does not support the discovery sought in Categories 7-9 and 17. Whether EEOC fulfilled its investigation and conciliation obligations depends on its actions in this case, not on an evaluation of internal policies governing the conduct of investigations and damages calculations. Further, this information is publicly available. For these reasons, Plaintiff's Motion is granted as to Categories 7-9 and 17.

**E. Discovery already provided to Select and requests that directly infringe on attorney privileges (categories 13-16).**

EEOC asserts various arguments for its refusal to submit to a 30(b)(6) deposition on Categories 13-16. Category 13 seeks the names of all individuals with personal knowledge of the allegations in the Complaint. Category 14 seeks the identity of which of Select's employees the EEOC represents and the "basis for Plaintiff's claim of representation." Category 15 seeks the "contents of and information set forth in Plaintiff's Initial Disclosures." Category 16 seeks "[d]ocuments produced by Plaintiff pursuant to its Rule 26 obligations and/or in response to Defendants' written discovery requests."

As to Category 13, EEOC asserts that it has already provided a witness list to Defendants and that a 30(b)(6) deponent would merely read the list of names previously disclosed to Defendants.

10

(Doc. No. 48 at 21-22). Therefore, the EEOC contends this category is duplicative and overly burdensome. (*Id*.). The Court agrees and grants Plaintiff's Motion as to Category 13.

As to Category 14, Plaintiff objects because "seeking 'the basis' for the EEOC's 'claim of representation' infringes upon the attorney-client communication privilege and attorney work-product protection." (*Id*. at 20). Select clarifies in its briefing and at the June 15, 2023 hearing that it seeks only information regarding communications prior to the forming of an attorney-client relationship. (Doc. No. 56 at 6; Doc. No. 62 at 108). This limited inquiry is indeed permissible, and the Court denies Plaintiff's Motion as to Category 14. *See EEOC v. JBS USA, LLC*, 2012 WL 169981, at *6 (D. Neb. Jan. 19, 2012) (denying motion for protective order in part and allowing Rule 30(b)(6) deposition on "general questions related to the EEOC's claims of representation" but that defendant "may not inquire into the content of any communications."); *see also EEOC v. ABM Indus. Inc.*, 261 F.R.D. 503, 508-09 (E.D. Cal. 2009).

For Categories 15 and 16, EEOC notes again that it has provided the requested information in writing to Defendants. (Doc. No. 48 at 22). The EEOC states, while in principle it does not object to a deposition on these categories, "it would need to be very limited in time and would consist of simply confirming information in the disclosures . . . or confirming the file was produced to Defendants . . . and explaining any illegible or ambiguous documents," and asserts this could be done more efficiently via written discovery. (*Id*.). Defendants did not directly address these categories and do not identify any information they need to confirm or any ambiguities they need to clarify as to these disclosures. While Plaintiff disputes that a deposition is necessary on these categories, EEOC does not object to permitting the inquiry for the limited purpose above. Thus, the Court will deny Plaintiff's Motion as to Categories 15 and 16 subject to EEOC's limitations above.

**F. Information Concerning the Scope of Plaintiff's Investigation (Category 19)**

Category 19 seeks inquiry into "any and all steps in Plaintiff's investigation of the claims asserted in its Complaint." (Doc. No. 48-2 at 7). EEOC challenges this category on several grounds. It argues that the information sought is irrelevant (Doc. No. 48 at 14), is protected by governmental deliberative process privilege (*id*. at 12-14) and has already been provided to Defendants (*id*. at 23).

Select contends that the scope of Plaintiff's investigation is a proper subject of inquiry

because "the EEOC is an agency of defined authority, [and] the scope of the EEOC's investigation is limited to that which is 'reasonably expected to grow out of the initial charge of discrimination.'" (Doc. No. 49 at 19) (citing *Kaplan*, 2011 WL 2115878, at *4).  Plaintiff construes such an inquiry as improperly seeking court review of the sufficiency of the EEOC's investigation.   However, EEOC mistakenly conflates the discovery process with judicial review.  If the EEOC's investigation into Defendants expanded beyond what would be "reasonably expected to grow out of the initial charge" it may have failed to meet its statutory obligation to investigate and conciliate.  There is no indication that is what happened here. However, such information would be relevant, to Select's sixth affirmative defense, *inter alia.*  Thus, Select's questioning directed at identifying any such improper change in scope is not per se objectionable.

Merely permitting discovery into this area does not invite improper judicial review of the sufficiency of the EEOC's investigation.  That said, to the extent Select later asserts that EEOC did in fact improperly exceed the scope of its initial charge, *Mach Mining* and related authorities clearly would limit the Court to determining whether EEOC met its statutory obligations to investigate and conciliate.  The Court denies EEOC Motion as to Category 19.

Accordingly, it is **ORDERED**:

Plaintiff's Motion for Entry of a Protective Order (Doc. No. 48) is GRANTED as to Categories 7-9, 13, and 17, and DENIED as to Categories 1-6, 10-12, 14-16, 18 and 19.

Dated:     August 29, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE